STATE OF NORTH DAKOTA, Respondent, v. J. W. PAULEY and Pearlie Pauley, Appellants.

(192 N. W. 91.)

**Criminal law — admission of instrumentalities for manufacture of intoxicating liquors seized at arrest of defendants not violative of Constitution providing that no one shall be compelled to be a witness against himself.**

1. Where officers of the law, even though uninvited, entered the dwelling house of defendants and there found defendant committing the crime of manufacturing intoxicating liquors, whereupon they arrested the defendants and seized instrumentalities, of an evidentiary nature, then being used in the commission of the crime, it is *held*, that the proof of such instrumentalities and their reception in evidence was not violative of the constitutional provision that no party in any criminal case shall be compelled to be a witness against himself.

**Intoxicating liquors — indictment for unlawful manufacture held sufficient.**

2. A criminal information alleging that defendants committed the crime of manufacturing liquor, through wilfully and unlawfully making, fermenting, and distilling a liquor which was intoxicating for a beverage, states a criminal offense, pursuant to § 10,092 Comp. Laws 1913.

Opinion filed December 8, 1922. Rehearing denied January 8, 1923.

Criminal Law, 16 C. J. § 1098 p. 567 n. 2. Intoxicating Liquors, 33 C. J. § 451 p. 729 n. 42.

---

Note.—On admissibility in evidence against defendant of document or articles taken from him, see notes in 59 L.R.A. 465; 8 L.R.A.(N.S.) 762; 34 L.R.A.(N.S.) 58; L.R.A.1915B, 834; and L.R.A.1916E, 715; 10 R. C. L. pp. 932-934; 2 R. C. L. Supp. 1112; 4 R. C. L. Supp. 680; 5 R. C. L. Supp. 574.

On necessity of warrant for search for or seizure of intoxicating liquors, see notes in 3 A.L.R. 1516; 13 A.L.R. 1316; and 27 A.L.R. 711.

Criminal prosecution in District Court, Burleigh County, *Nuessle,* J. Defendants have appealed from a judgment of conviction.

Affirmed.

*Edward S. Allen,* for appellants.

The dwelling house, used as a home by the defendants, cannot be searched and seizures made unless the officer making said search and seizure is authorized so to do by having in his possession search warrant duly issued, and if seizures are so made the property so taken, whether without value or only valuable as evidence cannot be permitted as evidence against the defendant. U. S. Const. 4th and 5th Amendments; N. D. Const. §§ 13, 18; Boyd v. United States, 116 U. S. 616; Amos v. United States, 255 U. S. 313; Story, Const. Law, §§ 1901, 1902; Cooley, Const. Lim. 299; Sedgw. Stat. & Consol. Law, 2d ed. 498; Wharton, Crim. Am. Law, § 560; Weeks v. United States, 232 U. S. 383; Silverthorne Lumber Co. v. United States, 251 U. S. 385; Flagg v. United States, 230 Fed. 481–483; People v. De La Meter, 182 N. W. 57; People v. Mayhew, 182 N. W. 676.

*F. E. McCurdy,* State's Attorney, for respondent.

## Statement.

Bronson, J. Defendants were convicted of the crime of manufacturing intoxicating liquors. They have appealed from the judgment. The facts are: In February, 1922, the sheriff, the chief of police, and a deputy sheriff visited the home of defendants in Bismarck. They possessed neither a warrant of arrest nor a search warrant. At the door they told the wife of one of the defendants that they desired to see her husband. She stated that she would call him. The officers stated that they would go to see him. They proceeded down in the basement and there they found the defendants manufacturing intoxicating liquor, and there possessed of the instrumentalities so to do. They seized the equipment used in distilling the liquor and also some of the material wherewith the same was manufactured. Defendants were thereupon arrested. At the trial defendants objected to the production of this equipment and its introduction in evidence.

Upon this appeal, defendants contend that the information does not state facts sufficient to constitute a crime and that the trial court er-

roneously received in evidence the equipment, in violation of defendants' constitutional privileges.

## Opinion.

The information alleges that defendants committed the crime of manufacturing liquor; that they did wilfully and unlawfully make, ferment, and distill a liquor which was intoxicating for a beverage. Section 10,092, Comp. Laws, 1913, prohibits the manufacture of intoxicating liquor. This section is not violative of the constitutional provision, Section 217, N. D. Const. that no person shall manufacture, for sale or gift, intoxicating liquors. The information states a criminal offense. The officers were not denied admittance within defendants' home. They were not denied the right to see defendants. · It is true that they were not invited guests. But, in the basement of their home, they saw defendants in the act of committing a crime. As peace officers it was their duty to arrest defendants, then and there without a warrant. Comp. Laws, 1913, § 10,567. They did there arrest them and seized the instrumentalities through which the crime was being committed. The instrumentalities seized were of an evidentiary nature. They were a part of the res gestæ in committing the crime. They were properly received in evidence. See note in 18 L.R.A.(N.S.) 253. Even though it should be conceded that the seizure of these instrumentalities by the officers was unreasonable and violative of defendants' constitutional rights against unreasonable searches and seizures, § 18, N. D. Const., it does not follow that the testimony of the officers or the introduction, as evidence, of such instrumentalities compels defendants in a criminal case to be witnesses against themselves, § 13 N. D. Const. Wigmore, in his work on Evidence, has elaborately considered the growth, development, and status of the principles established in the constitutional provisions quoted. He states: "It has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence. The illegality is by no means condoned; it is merely ignored." § 2183. Otherwise he states, concerning the constitutional provision compelling one to be a witness against himself, that, "it is not merely compulsion that is the kernel of the privilege, in history, and in the constitutional

definitions, but testimonial compulsion." § 2263, "If there was ever any rule well settled (until the opinion in Boyd v. United States, 116 U. S. 616, 29 L. ed. 746, 6 Sup. Ct. Rep. 524) it was this: That an illegality in the mode of obtaining evidence cannot exclude it, but must be redressed, or punished, or resisted, by appropriate proceedings otherwise taken. There is, therefore, no respect whatever in which the principle of the fourth amendment can be properly invoked in applying the principle of the fifth amendment." Such principles mentioned, concerning the fourth and fifth amendments to our United States Constitution, are embodied in §§ 13 and 18 of our Constitution. But it is unnecessary to discuss the principles announced in Boyd v. United States, supra, or the extent to which the same have been modified by later Federal decisions. Upon this record, we are satisfied that the officers as peace officers, had the right, and it was their duty, to arrest the defendants while committing a crime (Comp. Laws, 1913, § 10,567) and to seize the instrumentalities which evidenced the commission of such crime. Surely, as peace officers, with the imposed duty to preserve the peace and the law, they could have properly arrested and seized such instrumentalities while such crime was being committed before their eyes on a highway. Their right to interrupt the performance of a crime and to apprehend the offenders and to seize the instrumentalities then being used to commit the crime is not to be denied because defendants happened to be operating within the confines of their own home. Whether the seizure was unreasonable is not at issue in this cause. The judgment should be affirmed.

BIRDZELL, Ch. J., and CHRISTIANSON, J., concur.

GRACE, J. (dissenting). This is an appeal by the defendants from a judgment given on a verdict, finding the defendants guilty of manufacturing intoxicating liquors. The information charging defendants with the commission of the crime is as follows, omitting formal parts: "F. E. McCurdy, state's attorney in and for said county of Burleigh and state of North Dakota, in the name and by the authority of the state of North Dakota, informs this court, that heretofore, to wit: On or about the 1st day of February, in the year of our Lord, one thousand nine hundred and twenty-one, at Bismarck at the county of Bur-

leigh in the state of North Dakota, one J. W. Pauley and Pearlie Pauley late of the county of Burleigh and state aforesaid, did commit the crime of manufacturing intoxicating liquor committed in the manner following, to wit:

"That at the said time and place the said defendants did then and there wilfully and unlawfully make, ferment, and distill a liquid which was intoxicating for a beverage.

"This contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of North Dakota. Dated this 3d day of May, A. D. 1921."

After the filing of the information, the defendants were arraigned and requested to plead to the information. At this time no plea was entered. They instead demurred to the information on the ground that it appeared upon the face thereof that the facts there stated did not constitute a public offense. The demurrer was overruled and defendants entered a plea of not guilty. Thereafter the action was tried to the court and a jury and upon evidence introduced by the state, the defendants not introducing any evidence, but moving for a dismissal at the close of the state's testimony, the defendants were found guilty and thereafter sentenced to fine and imprisonment. The sentence of Pearlie Pauley being suspended. A motion for a new trial was made and denied. The defendants assign three errors.

(1) That the court erred in overruling defendant's demurrer to the information.

(2) That the court erred in admitting any evidence of the sheriff of Burleigh county, his deputies, the chief of police and other police of the city of Bismarck, in said county.

(3) That the court erred in certain of its instructions of the jury.

Considering the first assignment, it is claimed by appellants that under § 218 of our Constitution the manufacture and importation of intoxicating liquor, unless for sale or gift, is not a crime under existing law at the time of the arrest and conviction. The laws in force at the time of the arrest and conviction were the fundamental law, § 217 of the Constitution and § 10,092, Comp. Laws, 1913. Section 217 provides: "No person, association, or corporation shall within this state, manufacture for sale or gift, any intoxicating liquors, and no person, association, or corporation shall import any of the same for sale or gift,

or keep or sell or offer the same for sale, or gift, barter or trade as a beverage. The legislative assembly shall by law prescribe regulations for the enforcement of the provisions of this article, and shall thereby provide suitable penalties for the violation thereof."

Section 10,092 Comp. Laws, so far as material here, provides: "Any person, association, or corporation, who shall within this state, directly or indirectly manufacture any spirituous, malt, vinous, fermented or other intoxicating liquor, or shall import any of the same for sale or gift, as a beverage, or shall keep for sale or sell or offer for sale or gift, barter or trade, any of such intoxicating liquors as a beverage, shall for the first offense be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than two hundred nor more than one thousand dollars, and be imprisoned in the county jail not less than ninety days nor more than one year; and for the second and every successive offense, shall be deemed guilty of a felony and be punished by imprisonment in the penitentiary not exceeding two years and not less than one year."

The information charges only the manufacturing of intoxicating liquors and not the manufacture for sale or gift. It is the contention of defendants that whereas § 217 defines the crime as the manufacture for sale or gift and the information charges only the manufacture, that hence, the defendant is not charged with any crime defined in § 217. It may be admitted in order to arrive at a clear conception of defendant's contention, that the information does not charge them with any crime defined in § 217. If this be true, it is then equally clear that § 217 is in no way contravened by the charge contained in the information, hence, in this respect no constitutional question arises. But, notwithstanding such concession, that does not of itself show the information is bad. In short, though the information does not charge any crime under § 217, and if there were no other law to measure its legality than that section, it might be objectionable and perhaps demurrable on the ground claimed. We have no hesitancy, however, in stating that such is not the case. We believe the view is generally accepted, that the legislature has unlimited power to act in its own sphere, except where inhibited by the Constitution of the United States or the Constitution of this state. Taking this for granted, the legislature could enact any law which to it appeared wise, prohibiting the manufacture, sale or gift

of intoxicating liquors, or enact any law relative to intoxicating liquors that did not contravene the Federal or state Constitution. In the exercise of these broad powers it did enact § 10,092, which has hereinbefore been fully set forth. An examination of that section discloses that it prohibits the manufacture of intoxicating liquors within this state, irrespective of whether the same is manufactured for sale or gift. That section makes the manufacture of liquor without the addition of any other act, a crime, while § 217 of the Constitution includes the elements of sale, barter or gift with manufacture in order to constitute a crime, hence, the crime of manufacturing intoxicating liquors specified in § 10,092 is a distinct crime from that specified in § 217 in the respect just mentioned. It is clear, therefore, that this section of the statute does not conflict with § 217 of the Constitution, and that the legislature had the power through action in its own sphere to enact § 10,092, which does not offend against either the Federal or the state Constitution. Hence, the information does charge a crime under this section of the statute. The court therefore properly overruled defendant's demurrer.

Under appellants' second assignment of error, it is contended that the court erred in admitting in evidence over defendants' objection certain property taken from the dwelling house of the defendants by the sheriff of Burleigh county or his deputies, the chief of police of the city of Bismarck or other policemen of that city, and in receiving their evidence and that of other witnesses who obtained evidence by search and seizure in the dwelling house of defendants in the nighttime without having a warrant of arrest for the defendants, and without having a search warrant authorizing entry and search of the dwelling house. In other words, that the acts of such officers and the offering and receiving of such evidence at the trial, violates defendants' constitutional rights secured to them under §§ 18 and 13 of the state Constitution. The evidence so offered and received consisted of various utensils and instrumentalities which the officers or some of them took from defendants' home and which they claim to have been used by the defendants in the distillation of intoxicating liquors in their home or dwelling house. It is also clear from a full consideration of the evidence, that none of the officers were invited to or into defendants' home. The evidence clearly shows that it was the purpose of the officers to go to the home and enter and invade it for the purpose of determining whether

any intoxicating liquors were being manufactured there, for the officers nor any of them offer any other reason or excuse for their invasion.

Section 18 of the Constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

Section 13 of the Constitution provides: "In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall twice be put in jeopardy for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law."

Under the evidence and in the circumstances of this case, the entry by the officers and each of them upon the premises and into the home of the defendants, without a warrant for their arrest or for the arrest of either of them, without a search warrant, with no order or command from any court and with no authority whatever under our laws and Constitution, for the sole purpose of searching for and seizing intoxicating liquors and to discover if the same were manufactured in the home, was a wanton trespass and a direct and flagrant invasion of the constitutional rights of the defendants, who were occupying the premises as a home, guaranteed by § 18 of our Constitution. It is not necessary to elaborate this statement; it is true and can in no way be controverted by this record. The conclusion which we have reached in this respect, we believe, is sustained by the following cases: Boyd v. United States, 116 U. S. 616, 29 L. ed. 746, 6 Sup. Ct. Rep. 524; Ex parte Jordan, 96 U. S. 727–733, 24 L. ed. 877, 879; Bram v. United States, 168 U. S. 532, 42 L. ed. 568, 18 Sup. Ct. Rep. 183; Weeks v. United States, 232 U. S. 390, 58 L. ed. 652, L.R.A.1915B, 834, 34 Sup. Ct. Rep. 341, Ann. Cas. 1915C, 1177; Entick v. Carrington, 19 How. St. Tr. 1029; People v. Marxhausen, 204 Mich. 559, 3 A.L.R. 1505, 171 N. W. 557. Endless authority might be cited to the same effect. The cases in the United States Supreme Court just cited, principally had under con-

sideration the guaranty of rights of the people as preserved to them by the 4th and 5th articles of the amendments of the Constitution of the United States. Article 4 provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated; and no warrants shall issue but upon probable cause; supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." It will be seen that this is identical with § 18 of our Constitution.

Construing the 4th amendment of the Federal Constitution, Mr. Justice Bradley delivered the opinion of the court in Boyd v. United States, supra, and after quoting from the celebrated judgment of Lord Camden in Entick v. Carrington, 19 How. St. Tr. 1029, said: "The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employees, of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors and rummaging of his drawers that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property where that right has never been forfeited by his conviction of some public offense. It is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods is within the condemnation of that judgment. In this regard the 4th and 5th amendments run almost into each other."

Mr. Justice Day, in Weeks v. United States, said: "The effect of the 4th amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and

the duty of giving to it force and effect is obligatory upon all entrusted under one Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizure and enforced confession, the latter often obtained after subjecting accused persons to unwarranted practices, destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.

It is so clear that the constitutional right of defendants under § 18 of our Constitution has wholly been invaded that further discussion could make it no more clear. But it is contended, that though the officers violated the defendants' constitutional rights in the manner of procuring the evidence, that is, the utensils and instrumentalities claimed by them to have been used by defendants, in the manufacture of the alleged intoxicating liquor, nevertheless it properly could be used against the defendants to secure their conviction and offered as competent evidence at the time of the trial, unless prior to the time of the trial defendants had applied to the court for a return of the evidence on the theory that it was their property and unconstitutionally had been taken from them, and this on the asserted principle that the court when engaged in trying a criminal cause will not take notice of the manner in which witnesses have possessed themselves of papers or other articles of personal property which are offered in evidence against the party accused of crime. This principle was announced in the case of People v. Adams, 176 N. Y. 351, 63 L.R.A. 406, 98 Am. St. Rep. 675, 68 N. E. 636, and affirmed by the United States Supreme Court in Adams v. New York, 192 U. S. 585, 48 L. ed. 575, 24 Sup. Ct. Rep. 372. It is a principle that has been recognized by not a few decisions of various courts. In the Adams Case the officers were armed with a search warrant. Where there is a search warrant, and in executing it there is incidentally discovered evidence which may be competent in certain respects, that is a different case than where the home is invaded without any search warrant and all of the evidence is obtained by such unlawful invasion. But upon what principle do those decisions rest which assert that the court when engaged in trying a criminal cause will not

take notice of the manner in which witnesses have possessed themselves of papers or other articles of personal property which are offered in evidence against the party accused of crime where that party objects to their introduction on the ground that they came into the possession of those through whom they are offered, by the invasion of his constitutional rights. The principle declared in those cases is not declared in any statutory law nor in any constitutional provision, and such courts cannot point to any law in this respect which authorizes the declaration of such a principle; neither can they in all the well-recognized rules of evidence find any rule of such a nature. Such a rule is nowhere to be found in the books. From what source then does the principle have its inception? The answer is, and can only be, from the arbitrary action of the trial court. When evidence such as this is offered, and its reception timely and properly objected to, a determination on the trial whether it was obtained by violation of the constitutional rights of the accused should and must be made, otherwise one of the most sacred constitutional rights of the person accused of crime and of all persons in similar situation, is flagrantly violated. Where such evidence is offered, and on the ground hereinbefore stated is objected to, the question which thereby arises is not in any sense a collateral matter, but is an essential part of the proceedings at the trial and of the case on trial. Furthermore, the rule has no reason and will not bear analysis. If one is charged with crime and is arrested with or without a warrant, and after his arrest the officers by threats, personal abuse, the application of physical torture or by fraud or deception obtain from him a written confession signed by him, wherein the acts constituting the crime are fully described, and on the trial the accused is confronted with such confession and it is offered in evidence, is such confession competent and admissible where defendant shows or offers to show that the same was obtained from him in the manner above mentioned; and, has he waived all his rights to make any such showing, and to object to the reception of the confession as evidence by failing or neglecting prior to the time of the trial to petition the court to have such confession returned to him? or, rather is it not the business and is it not the general rule that the court in the course of the trial stops and determines whether the confession was obtained in the manner above indicated or whether it

was the free and voluntary act of the accused before it determines the competency and admissibility of the same.

Does not the court in such case determine the manner whereby the officers became possessed of the confession of the accused? We are convinced that in such case it is the general rule that the accused would have a perfect right to show all the circumstances and conditions surrounding the making of the confession, and if he succeeds in showing that it is not voluntary and free from the elements above mentioned, upon objection, the confession will be excluded on the ground that it violates his constitutional right of not being compelled to be a witness against himself, which right and other personal rights are secured him by § 13 of our Constitution. So in the case before us, we think on the trial it was proper for the defendants to show by their objection to it, that the evidence offered was obtained in violation of their constitutional rights under §§ 13 and 18 of our Constitution, and that to deny them the privilege of making that showing or the overruling of their objections to the reception of the evidence to which such objections relate, operated to deny them their constitutional rights and was prejudicial and reversible error. One of the principal functions of trial courts is to determine competency and admissibility of evidence when offered and under our law no preliminary applications, motions or petitions to it before the time of the trial are required, before it is incumbent upon it to so determine. The constitutional rights of persons accused of crime cannot be denied on any such theory. This case is not one where a person has been legally arrested and then his person searched to discover and seize the fruits or evidence of crime and it is not governed by any such rule as may be proper in that kind of case. Here the defendants' house and home was just as effectively broken into in the manner the evidence shows the entry was made, as if the doors had been closed and locked and the windows likewise and by force of the officers were broken in and the entry into the home thus effected, and this, without a warrant of arrest or one of search and seizure. The evidence offered was gotten in the manner and by this flagrant violation of defendants' constitutional rights. If the officers can lawfully do what they did in this case, they can with no more right, reason or authority break into any home in the state on any pretext at any time, day or night, without any reference to the sanctity of the home or the constitutional

guarantee that surrounds it. It is unlawful to manufacture, sell or give away intoxicating liquors; it is contrary to the laws of this state and those who do so should be arrested and punished according to law, but in doing so those charged with the enforcement of the law must proceed according to the law and the Constitution just the same in that class of cases as in the prosecution of those charged with other criminal offenses, defined in other of our laws, and provisions of the Constitution relating to such crimes. No violation of the prohibition laws shall be countenanced by any officers, and violators of it should be vigorously prosecuted, but always under the sanction and authority of the law and provisions of the Constitution relative thereto and to the rights of those accused of such crime.

In view of the conclusion at which we have arrived, it is unnecessary to give any attention to the 3d assignment of error, based upon the claim that certain of the instructions of the court were erroneous. The judgment appealed from should be reversed and the case remanded for further proceedings.

Robinson, J. (dissenting). In the main I do concur in the opinion as written by Mr. Justice Grace. This is a case of turning water into wine. It presents two questions; one on the complaint; the other on the evidence and the misconduct of the officers of the law. To secure conviction the officers committed a greater offense than that charged against the defendant. They obtruded themselves into his home, made searches, arrested him and seized some of his property which was offered in evidence against him. The officers should have known and respected the sacred and constitutional right of every man to be secure in his home and property against any such search and seizure. The complaint or information is that the defendant "did make, ferment and distill a liquid which was intoxicating for a beverage." It does not state an offense under the prohibition section of the Constitution, which is that no person shall manufacture for sale or gift any intoxicating liquors. § 217. It does state an offense under the statute which forbids the manufacture of intoxicating liquor for any purpose. § 10,092. But that statute is in direct conflict with the first section of the Constitution.

"All men have a right to acquire and possess property and to pursue and obtain safety and happiness."

Now liquor is property. It has been so considered always and everywhere. In every part of the world it has a good exchangeable value. Since every man has a right to acquire and possess property, defendant had a right to acquire and possess liquor property. The state may regulate the use of property and traffic in liquor and in milk, but it may not penalize anyone for possessing milk or liquor. It is a maxim of law that everyone must use his own property so as not to injure another. That is a universal law; it is good everywhere and at all times. The state had a right to abolish the saloons and to restrain the liquor traffic, because it became a nuisance and a menace to society, a destroyer of property and a promoter of crime and idleness. And to some extent, for like reasons, it may restrain and regulate the traffic in tobacco, cigars and games that lead to idleness, poverty, and crime. Those vices do commonly go together. The one induces the other. But property is property; and the purpose of every just law is to safeguard life, liberty, and property.

And what of civil liberty? It is natural liberty restrained by law so far as may be necessary to protect the members of society. On his lonely island Robinson Crusoe had the full enjoyment of natural liberty.

"He was monarch of all he surveyed;
His right there was none to dispute."

But when his good man Friday came upon the island, then came some restraint of natural liberty. For in every assembly of two, three, or more persons the law of civil liberty prevails. Every person must refrain from injury to another by force, fraud, deception, overreaching, sharp practices, sharp bargains, and otherwise. Manifestly the law of civil liberty did not bar Robinson Crusoe from his natural right to make and use wine and strong drink. When such a right is used inoffensively, it is natural and inherent just the same as the right to drink tea or coffee. To deny it by force and power is sheer tyranny and despotism. The right is fully assured by the first section of the state Constitution. Any person for his own use may grow and obtain grapes, hops, malt, barley, corn, wheat and use the same inoffensively to make wine, beer, or strong drink. He may "drink and forget his sorrows and remember his poverty no more" But as a member of society he must observe the proprieties of life. He must not appear in a nude or drunken state, like Noah after the flood. Such is the law and

it should appeal to the reason and common sense of every good citizen who is not a crank.

A different topic is the tyranny of the statute and its drastic enforcement. Since the fugitive slave act there has not been another statute so drastic and so questionable. It is strictly a crank statute. It does violence to the plain letter of the Constitution. It imposes excessive fines and unusual punishments. For turning grape juice or water into wine, the very thing that was done by Jesus Christ, the penalty is equal to that for a horse thief, and the expense of the crusade, the reckless destruction of life and property and the incentive to crime—all that is a fearful menace to the state. Surely it is time for decent, honest people to stop and think.

The judgment should be to dismiss the action.