**The STATE of North Dakota, Plaintiff and Respondent,**

v.

**Mark Jay DOVE, Defendant and Appellant.**

**Cr. No. 400.**

Supreme Court of North Dakota.

Dec. 23, 1970.

Helgi Johanneson, Atty. Gen., and Dale H. Jensen, State's Atty., Bismarck, for plaintiff and respondent.

C. J. Schauss, Mandan, for defendant and appellant.

STRUTZ, Judge, on reassignment.

This case presents questions regarding the constitutional requirements for obtaining a search warrant. Jerold Hoirup, a detective sergeant in the Bismarck Police Department, applied to the Honorable W. J. Austin, as magistrate, for a warrant to search for narcotics on certain premises known as "115 North Washington Street, North main floor apartment and basement." In support of his application, the officer submitted an affidavit which stated that he had reason to believe that on the premises described there was concealed marijuana, LSD, and narcotic drugs. He further stated in such affidavit that the facts tending to establish the foregoing grounds for issuance of a search warrant were as follows:

"That information given by a reliable source was given to Jerold Hoirup of the Bismarck Police Dept. That Marijuana, L.S.D. and Narcotic Drugs are concealed in the named place."

A second affidavit was presented by the same officer for a warrant to search premises known as "A Green V.W. Bus N.D. lic. number 261–778," located in the County of Burleigh and State of North Dakota, on the ground that said affiant had reason to believe that there was being concealed on said premises certain property, namely, marijuana, LSD, and narcotic drugs, in the possession of a person with intent to use it as a means of committing a public offense. The affidavit then stated that the facts tending to establish grounds for the issuance of a search warrant were:

"That the affiant has received reliable information from a reliable source who has provided information before."

Two search warrants were issued, one on each application. However, the only search warrant at issue in this case involves the search of the premises at 115 North Washington Street, and only the validity of that search warrant will be considered in this opinion.

In executing the warrant for search of the premises at 115 North Washington Street, the Bismarck police officers found and confiscated five pipes, three empty plastic bottles, two cigarette-type holders, one plastic bag with a brown item inside, one bottle containing a white item, one bottle of Anacin, one bottle containing a red pill, one bottle containing nine blue pills, one white can containing pills, and one-half pill which was white in color.

No marijuana was found at the defendant's residence, but a scraping of the pipes and cigarette holders which were found showed traces of a substance which laboratory tests disclosed to be marijuana.

The defendant thereafter was charged with possession of marijuana on the basis of the items found at 115 North Washington Street. Prior to trial, the defendant moved to suppress the evidence discovered and seized at 115 North Washington Street, on the grounds that the search had been unlawful and in violation of the constitutional rights of the defendant and that the search warrant issued for a search of the premises at 115 North Washington Street was invalid. The motion to suppress was denied, and the defendant was tried and convicted of illegal possession of marijuana. He now appeals to this court, urging a number of specifications of error.

We first will consider whether the trial court erred in denying the defendant's mo-

tion to suppress the evidence which was obtained by a search of the premises occupied by the defendant, pursuant to the search warrant based upon the affidavit of the police officer.

■ On matters involving the validity of a search of a private dwelling under the Fourth Amendment to the United States Constitution, the United States Supreme Court has held that where the search warrant is based upon an insufficient affidavit, any evidence obtained as the result of such search is inadmissible. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We therefore must determine whether the affidavit which was given in support of the application for a search warrant in this case was insufficient, as contended by the appellant.

■ The United States Supreme Court has laid down certain rules for determining the validity of a search warrant, which State courts are bound to observe. The Fourth Amendment to the United States Constitution, which provides that no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and persons or things to be seized, applies to both warrants of arrest and search warrants. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). The purpose of the affidavit in support of a search warrant is to enable the magistrate who issues the warrant to determine whether "probable cause," required to support the warrant, in fact exists. The magistrate should not accept the mere conclusion of the person who makes application for a warrant, to the effect that grounds for the issuance of a warrant exist.

The affidavit upon which the magistrate issued the search warrant in this case stated that the affiant had reason to believe that, on the described premises,

"* * * there is now being concealed certain property, namely, Marijuana, L.S.D. and Narcotic Drugs."

It further stated that the facts tending to establish grounds for issuance of a search warrant were:

"That Information given by a reliable source was given to Jerold Hoirup of the Bismarck Police Dept. That Marijuana, L.S.D. and Narcotic Drugs are concealed in the named place."

The record does not reveal, nor does the State contend, that any information other than as set forth above was brought to the attention of the magistrate. We now must decide whether this was sufficient to enable the magistrate to determine whether probable cause existed for the issuance of a search warrant.

The situation facing us in this matter is almost identical to that which faced the United States Supreme Court in Aguilar v. State of Texas, *supra*. In that case, the affidavit stated:

"Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law."

■ The United States Supreme Court not only held this affidavit insufficient to enable the magistrate to determine whether there was probable cause to believe that the law had been violated, but it laid down certain guidelines for us to follow in determining whether an affidavit given in support of an application for a search warrant was sufficient to show probable cause. The court said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcot-

ics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, [11 L.Ed.2d 887,] was 'credible' or his information 'reliable.' "

Thus we see that the magistrate must not only be informed of some of the underlying circumstances from which the informant concluded that the contraband which is being sought was where he claimed it was, but he must also be advised of some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was credible or that his information was reliable. None of this information was given to the magistrate in the case before us. All that he was told was that information that marijuana was concealed at the place to be searched was given to the officer "by a reliable source."

█ What the circumstances were from which the officer concluded that the informant was reliable was not given to the magistrate. He had no information which enabled him to determine probable cause. Where the affidavit states that the informer is reliable, it must give further information as to the circumstances upon which the informant based his conclusions and the circumstances from which the officer concluded that the informant was credible or that his information was reliable. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

It is obvious, from the above, that evidence produced by a search of the premises at 115 North Washington Street under the search warrant should have been suppressed. We now must determine whether the conviction of the defendant should be reversed because of the admission of this evidence.

█ There may be some constitutional error in a conviction which, in the particular case, is so unimportant and insignificant that it may be deemed harmless. However, before a federal constitutional error can be held harmless, the reviewing court must be able to declare that in its opinion such error was harmless beyond a reasonable doubt. Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L. Ed.2d 171 (1963); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

█ In this case, the only evidence submitted by the State was the evidence resulting from the unlawful search of the premises. No other evidence was received upon which this conviction could be sustained. Accordingly, it cannot be said that this evidence was harmless beyond a reasonable doubt. As Justice Black said in Chapman v. California,

" * * * All 50 States have harmless-error statutes or rules, and the United States long ago through its Congress established for its courts the rule that judgments shall not be reversed for 'errors or defects which do not affect the substantial rights of the parties.' 28 U.S. C. § 2111. None of these rules on its face distinguishes between federal constitutional errors and errors of state law or federal statutes and rules. All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.

"III.

"In fashioning a harmless-constitutional-error rule, we must recognize that harmless-error rules can work very unfair and mischievous results when, for example, highly important and persua-

sive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one. What harmless-error rules all aim at is a rule that will save the good in harmless-error practices while avoiding the bad, so far as possible.

"The federal rule emphasizes 'substantial rights' as do most others. The California constitutional rule emphasizes 'a miscarriage of justice,' but the California courts have neutralized this to some extent by emphasis, and perhaps overemphasis, upon the court's view of 'overwhelming evidence.' We prefer the approach of this Court in deciding what was harmless error in our recent case of Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. There we said: 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' Id., at 86–87, 84 S.Ct. at 230. Although our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, this statement in *Fahy* itself belies any belief that all trial errors which violate the Constitution automatically call for reversal. At the same time, however, like the federal harmless-error statute, it emphasizes an intention not to treat as harmless those constitutional errors that 'affect substantial rights' of a party. An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, under *Fahy*, be conceived of as harmless. Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in Fahy v. State of Connecticut about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

No attempt is made in this case to show the evidence, wrongfully received, to be harmless. In fact, it is the only evidence received against the defendant and the only evidence upon which the conviction was had.

For reasons stated in this opinion, the conviction is reversed.

PAULSON and ERICKSTAD, JJ., concur.

TEIGEN, Chief Justice (concurring specially).

I concur in the result. However, I do not agree with the broad language of paragraph number 3 of the syllabus. Our holding, as set forth in the opinion, is limited to the principle of law that where a search warrant was based upon an affidavit which does not meet the requirements of the Fourth Amendment to the Federal Constitution, any evidence obtained as a result of the search is inadmissible. The opinion applies the federal constitutional requirements as interpreted by the federal decisions. I agree that the affidavit in this case does not meet the federal standards and, therefore, under Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the evidence obtained is not admis-

sible in the state court. *Mapp* forced upon the states the exclusionary rule of admissibility of evidence where such evidence was obtained in violation of the federal constitution. *Mapp*, however, does not require the application of the exclusionary rule of admissibility to the states where the evidence is obtained in violation of the state constitution or its statutes. This state, historically, has followed the common-law rule of admissibility. State v. Fahn, 53 N.D. 203, 205 N.W. 67 (1925); State v. Pauley, 49 N.D. 488, 192 N.W. 91 (1922); State v. Lacy, 55 N.D. 83, 212 N.W. 442 (1927). See also, 50 A.L.R.2d 531–546, and later case service.

I cannot concur in paragraph number 3 of the syllabus as written. I think that this paragraph should be limited to our holding in this case. If it is the intent of the majority to reverse the common-law rule of admissibility of evidence and adopt the exclusionary rule in this state, where the federal requirements are met but the state requirements are not met, they should say so in the opinion.

KNUDSON, J., concurs.