**STATE of North Dakota, Plaintiff and Appellee,**

v.

**SPOKE COMMITTEE, UNIVERSITY CENTER, GRAND FORKS, North Dakota, Defendant and Appellant,**

**and**

**"Deep Throat", a motion picture, and SRO Entertainment, 21 Gramarcy Park South, New York, New York, Defendants.**

**Civ. No. 9472.**

Supreme Court of North Dakota.

Sept. 29, 1978.

Thomas B. Jelliff, State's Atty., Grand Forks, for plaintiff and appellee.

Reno, O'Byrne & Kepley, Champaign, Ill., for defendant and appellant; argued by J. Steven Beckett.

ERICKSTAD, Chief Justice.

The Spoke Committee, a student activities programming committee at the University of North Dakota, appeals to this court from the order of the three-judge district court, consisting of the Honorable James H. O'Keefe, the Honorable Robert L. Eckert, and the Honorable Kirk Smith, dated the 16th day of December, 1977, which affirmed the oral opinion and order dated November 14, 1977. In essence, the three-judge court affirmed the oral decision of the Honorable Kirk Smith of the 18th day of May, 1977, which concluded that under Section 12.1–27.1–08, N.D.C.C., the film "Deep Throat" was obscene and a statewide injunction should issue prohibiting the future showing of the film.

Spoke, otherwise known as Student Programming of Kampus Events, asserts on this appeal that: (1) The search and seizure procedure in this case violated Spoke's rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States; (2) The North Dakota Obscenity Control Statute, Chapter 12.1–27.1 is unconstitutional in violation of Spoke's rights under the First and Fourteenth Amendments to the Constitution of the United States; and (3) Spoke's rights under the First and Fourteenth Amendments to the Constitution of the United States were infringed by the holding of the court below that the film "Deep Throat" was obscene, given the circumstances of its exhibition in a symposium about obscenity held at the University of North Dakota.

For reasons hereinafter stated in this opinion, we agree with Spoke on point number one and reverse the order of the three-judge district court.

In contention number one, Spoke asserts that its rights have been violated because the affidavit of the State's Attorney of Grand Forks County failed to establish probable cause upon which the search warrant could issue, and because the affidavit and search warrant procedure did not provide an opportunity for a judicial officer to focus searchingly on the issue of obscenity.

The essential parts of the affidavit follow:

"I.

"That your Affiant is the States Attorney of Grand Forks County, State of North Dakota and under Section 12.1–27.-1–06 of the North Dakota Century Code is defined as an appropriate Law Enforcement Officer in connection with the above recited section of law;

"II.

"That your Affiant has been informed by Mr. Russell Brown of the University of North Dakota, and by an article in the Grand Forks Herald dated April 12, 1977, that the film "Deep Throat" will be shown in the Student Union Ballroom located on the campus of the University of North Dakota, Grand Forks, North Dakota, at 7:30 p.m. April 13, 1977;

"III.

"That your Affiant has read numerous articles and critiques about the film "Deep Throat" and that from your Affiant's reading of said articles, critiques and criticisms of said film your Affiant believes said film depicts sodomy between human beings as defined by Section 12.1–27.1–01(7) [12.1–27.1–01(8)] of the North Dakota Century Code and in specific depicts contact between the penis of one male human being and the mouth of one female human being actors in said film, as defined by the above stated section;

"IV.

"Your Affiant requests a duly signed Search Warrant by Judge A. C. Bakken of the District Court under the provisions of Section 12.1–27.1–06 of the North Dakota Century Code and in specific under subsection (a) of said statute and subsection (b) of said statute;

"V.

"That your Affiant intends to bring a civil proceeding in the District Court of

the County of Grand Forks for a determination of obscenity of the film "Deep Throat" and that your Affiant requests said Search Warrant for seizure of a copy of said film for preservation of evidence to be used in the civil proceeding that will be commenced by your Affiant in the name of the County of Grand Forks, State of North Dakota."

■ Examining the affidavit from the standpoint of the Fourth Amendment alone, it appears to be defective. What we have here is an affidavit based upon hearsay. It is true that this fact alone does not make the affidavit defective. An affidavit based upon hearsay must be shown to be credible or reliable. In *Aguilar v. State of Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court found a search warrant defective that was based upon an affidavit that read:

" 'Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.' " 378 U.S. at 109, 84 S.Ct. at 1511, 12 L.Ed.2d at 725.

In analyzing that affidavit in light of the Fourth Amendment, the Supreme Court, speaking through Justice Goldberg, said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable'. Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' *Giordenello v. United States,* . . . 357 U.S. 480 at 486, 78 S.Ct. 1245 at 1250, 2 L.Ed.2d 1503; *Johnson v. United States,* . . . 333 U.S. 10 at 14, 68 S.Ct. 367 at 369, 92 L.Ed. 436, or, as in this case, by an unidentified informant." 378 U.S. at 114–115, 84 S.Ct. at 1514, 12 L.Ed.2d at 729.

In attacking the affidavit, the Court said: "The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' " 378 U.S. at 113, 84 S.Ct. at 1513, 12 L.Ed.2d at 728.

■ In the instant case, the State's Attorney did not identify his sources of information as to the obscene nature of the film, nor did he attempt to show the reliability of the sources of information, and for that matter he did not even assert their reliability. This is difficult to understand in light of the fact that the State's Attorney, in arguing the case before the three-judge court, indicated that he had read critiques of the film in Time Magazine, in a book entitled "Adam Reviews Porno Films", and in the Minneapolis Tribune, all of which indicated that the film was pornographic, and all prior to signing the affidavit. Although too late then, even at oral argument counsel failed to submit the specific dates and pages of the references to the court.

Because of the lack of proof of the reliability of the information upon which the affiant drew his conclusions, we believe that the affiant forced the judge before whom the affidavit was brought to draw the conclusion of probable cause from an affidavit that did not adequately disclose probable cause.

In this particular case, it would have been easy to have secured the necessary information by having first observed the film and

then executed the affidavit with particularity and with personal knowledge of the facts, inasmuch as the search warrant was not used until after the showing of the film.

In a decision subsequent to *Aguilar,* the United States Supreme Court in *Spinelli v. United States,* 393 U.S. 410, 413, 89 S.Ct. 584, 587, 21 L.Ed.2d 637, 641–642 (1969), in explaining why the affidavit was found deficient in *Aguilar,* said:

"First, the application failed to set forth any of the 'underlying circumstances' necessary to enable the magistrate independently to judge of the validity of the informant's conclusion that the narcotics were where he said they were. Second, the affiant-officers did not attempt to support their claim that their informant was ' "credible" or his information "reliable." ' "

In analyzing the affidavit in *Spinelli,* which was to the effect that the FBI had maintained a surveillance of Spinelli's activities for five days; that he had been seen entering an apartment that contained two telephones; that he was known as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers; and finally that the FBI had been informed by a confidential, reliable informant that Spinelli had been operating a handbook and accepting wagers and disseminating wagering information by means of the telephones; the Court concluded that the affidavit was deficient.

In reaching this conclusion, the Court said:

"Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion. Perhaps even more important is the fact that *Aguilar's* other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation." 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 643.

█ As the Fourth Amendment to the Constitution of the United States [1] protects the people from unreasonable searches and seizures and provides that no warrants shall issue, except upon probable cause, and we have found probable cause to be lacking in this case because of the defects in the affidavit; as evidence obtained in violation of the Fourth Amendment upon objection by a defendant must be excluded from evidence against him, not only in criminal proceedings, but also in proceedings only quasi-criminal in nature, *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); and as the exclusionary rule of the Fourth Amendment has been specifically incorporated into the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States [2] and applied to the states so that an unlawful search and seizure by state officials is subject to Fourth Amendment attack, *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), it seems that the order of the three-judge district court in this case must be reversed.[3]

Before we close our consideration of this matter, however, there is one aspect of the Fourth Amendment argument we must

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. amend. IV.

2. "*Section 1.* All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S.Const. amend. XIV, Sec. 1.

3. *See also: State v. Dove,* 182 N.W.2d 297 (N.D.1970) in which we discussed the sufficiency of an affidavit for a search warrant based upon hearsay information; and *State v. Erdman,* 170 N.W.2d 872 (N.D.1969) in which we discussed the sufficiency of a complaint for an arrest warrant based upon a statement of conclusion.

consider and that is whether or not the decisions upon which we have relied for our views in connection with Fourth Amendment infringements are applicable in this case, inasmuch as this case does not involve a prosecution for the commission of a crime but an effort to enjoin Spoke and others from showing the film in this state.

In this connection, it should be noted that one of the judges of the three-judge court in this case concluded that the search warrant procedure was defective, but reasoned that as this was a civil case, the exclusionary rule would not apply and thus the deficiencies in the procedure were of no consequence.

Spoke, on the other hand, points out that both *Marcus* and *Quantity of Copies of Books* were civil proceedings and that the United States Supreme Court has specifically held that the Fourth Amendment Exclusionary Rule pertaining to unlawful searches and seizures applies to civil forfeiture proceedings as well as to criminal proceedings. *See One 1958 Plymouth Sedan v. Commonwealth of Pa.,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).

In *One 1958 Plymouth Sedan,* the Pennsylvania authorities attempted to secure a forfeiture of a vehicle that was involved in an illegal transportation of 31 cases of liquor not bearing Pennsylvania tax seals. The liquor was discovered by a search that was found to have been illegal by a lower court, but the Pennsylvania Supreme Court upheld the forfeiture on the ground that the exclusionary rule applied only to criminal prosecutions and was not applicable in a forfeiture proceeding. The United States Supreme Court, however, disagreed saying that the exclusionary rule, obligatory upon the states under the Fourteenth Amendment, is applicable to forfeiture proceedings. Accordingly, the judgment of the Pennsylvania Supreme Court was reversed.

■ There is a significant difference between a proceeding such as involved in *One 1958 Plymouth Sedan,* in which a forfeiture was sought of the vehicle used to transport cases of liquor upon which the tax seals were missing, and this proceeding in which an injunction against the showing of a film is sought. The answer to this issue, however, does not depend upon any distinction or any similarity in the two proceedings. It is found in the language of the statute which authorizes an appropriate legal officer to seize a single copy of the allegedly obscene material upon the issuance of a search warrant by a district judge.[4] We are of the opinion that a search warrant not based upon probable cause is not a lawful search warrant, nor is the search conducted under such a warrant a lawful search. On that basis alone the proceedings in this case cannot support the court order.

We believe this construction reasonable in light of the added features that under Section 12.1–27.1–08(3), N.D.C.C., the court order declaring the film to be obscene may be used as evidence to establish scienter in a subsequent criminal prosecution under certain circumstances, and that this proceeding was initiated by an official of the Government. *See also* 5 A.L.R.3d 670, and particularly A.L.R.3d, 1977 Supp. § 5(a) [5 A.L.R.3d 678].

A case of significance because it involves an action to abate a nuisance and to secure a temporary and permanent injunction is that of *Carson v. State,* 221 Ga. 299, 144 S.E.2d 384 (1965), where the Supreme Court

---

4. "4. Upon issuance of a search warrant by a district judge, the appropriate legal officer may seize a single copy of the allegedly obscene material to secure and preserve evidence for the civil, and any possible criminal, proceedings under this chapter, subject to the following provisions:

a. If only a single copy of the material is available within the jurisdiction, the defendant shall either provide a duplicate or make the original available for duplication, at the county's expense, by the court during time periods when the material is not on sale or exhibition.

b. If only a single copy of such materials is available within the jurisdiction and circumstances make duplication either impossible or impractical, the defendant shall immediately make the single copy available for viewing by the court and subsequently available for viewing at trial." § 12.1–27.1–06(4), N.D.C.C.

of Georgia, after finding a search warrant defective because it lacked probable cause, suppressed the evidence which was obtained through the seizure under the search warrant.

■ Without holding that the exclusionary rule applies in civil cases when evidence is secured through an illegal search and seizure, we conclude that the film was secured illegally, contrary to the statute in this case, and must be excluded and the order of the three-judge court must be set aside.

Having disposed of this case on the basis of Chapter 12.1–27.1, N.D.C.C. and the Fourth and Fourteenth Amendments, it is unnecessary for us to consider Spoke's First Amendment[5] arguments relative to this issue, or to consider points two and three raised by Spoke in this case. The order of the three-judge court is reversed.

SAND, PAULSON and VANDEWALLE, JJ., concur.

PEDERSON, Justice, concurring specially.

Being influenced by the logic and reasoning of the Chief Justice's opinion, and because there is no other choice, I agree that the film that was seized must be returned to the Spoke Committee and not considered further in this case. The Fourth Amendment makes no distinction between criminal and civil proceedings in prohibiting unreasonable searches and seizures and in requiring that warrants be issued only upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized. As of this time I am willing to concede that we must require the film returned in order to maintain judicial integrity. I am disappointed that, without any alternatives, it becomes necessary to exclude truth from judicial searches for truth. Insufficient demands for alternatives have held back efforts to find alternatives. See,

Kamisar, *A Reply to Critics of the Exclusionary Rule,* Judicature, Vol. 62/No. 2, at 66 (August 1978).

The majority opinion necessarily reverses the decision and I am compelled to say that it does not prevent a new proceeding to determine whether "Deep Throat" is obscene under North Dakota standards. I would have preferred that a new trial be specifically awarded. I know of no reason why a test of the movie's obscenity cannot proceed without the evidence seized. The doctrine of double jeopardy would not prevent it. Even though the search and seizure under § 12.1–27.1–06(4), NDCC, fails to meet the standard of the Fourth Amendment, the obscenity control statute applies to a "performance" which is not subject to seizure, as well as to "material" which may be seized, therefore an obscenity determination can be made without any search or seizure.

5. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S.Const. amend. I.